# In the
# United States Court of Appeals
# for the Seventh Circuit

**STELLA PATERAKOS,**

**Plaintiff-Appellant,**

v.

**CITY OF CHICAGO and
CRYSTAL WARREN,**

**Defendants-Appellees.**

Appeal from the United States District Court, Northern District of Illinois, Eastern Division

No. 21-cv-00052

The Honorable Judge Sara L. Ellis

## CORRECTED REPLY BRIEF OF PLAINTIFF-APPELLANT
## STELLA PATERAKOS

Heidi Karr Sleper, ARDC # 6287421
Kurtz, Sleper & Exline, LLC
610 W. Roosevelt Rd, Ste. A2
Wheaton, IL 60187
(630) 323-9444
hsleper@kselegal.com


Attorney for Plaintiff-Appellant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................ 2

ARGUMENT ............................................................................................ 3

I.     The District Court Erred in Finding Comparators were not Similarly
Situated ..................................................................................................... 3

II.    There Is Sufficient Evidence to Warrant a Trial As to Whether
Paterakos's Discipline Was Pretext for Discrimination.................................. 8

III.   A Reasonable Jury Could Find that the Defendants Violated the FMLA
       15

CONCLUSION .......................................................................................... 21

CERTIFICATE OF COMPLIANCE WITH THE LENGTH REQUIREMENTS OF
F.R.A.P. RULE 32(a)(7), F.R.A.P. 32(g), CR 32(c)......................................... 22

# TABLE OF AUTHORITIES

*Altwasser v. Am.'s Auto Body, Inc.*, No. 21-CV-2524, 2024 WL 1798778 (N.D. Ill. Apr. 25, 2024)........................................................................................ 13

*Ballard v. Chicago Park Dist.*, 900 F. Supp. 2d 804 (N.D. Ill. 2012), *aff'd,* 741 F.3d 838 (7th Cir. 2014). ............................................................................ 15

*Bommiasamy v. Galesburg Hosp. Corp.*, 727 F. Supp. 3d 767 (C.D. Ill. 2024)... 3

Bragg v. Munster Med. Rsch. Found. Inc., 58 F.4th 265 (7th Cir. 2023) .......... 3

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012).................................... 3,4, 5

*Cox v. FCA US, LLC*, No. 122CV01279JMSMJD, 2024 WL 1363804 (S.D. Ind. Apr. 1, 2024) ............................................................................................ 3

*David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216 (7th Cir. 2017)........................................................................................................ 4

*Emmel v. Coca-Cola Bottling Co.,* 95 F.3d 627 (7th Cir. 1996).................... 7, 11

*Gordon v. United Airlines, Inc.,* 246 F.3d 878 (7th Cir. 2001)........................... 3

*Hasham v. California State Bd. of Equalization,* 200 F.3d 1035 (7th Cir. 2000 13

*Ismail v. Brennan*, 654 F. App'x 240 (7th Cir. 2016) ....................................... 8

James v. Sheahan, 137 F.3d 1003 (7th Cir. 1998))........................................ 14

*Juday v. FCA US LLC*, No. 119CV00831TWPMPB, 2021 WL 364203 (S.D. Ind. Feb. 3, 2021), *aff'd,* 57 F.4th 591 (7th Cir. 2023). ....................................... 20

*Lesiv v. Illinois Cent. R.R. Co.,* 39 F.4th 903 (7th Cir. 2022) ........................... 4

*Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024)......................... 12

O'Regan v. Arbitration Forums, Inc., 246 F.3d 975 (7th Cir.2001) .................. 8

*Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n. 3 (7th Cir.2001) ...................... 3

Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999)............................. 14

*Vichio v. US Foods, Inc.*, 88 F.4th 687 (7th Cir. 2023) ..........................2, 3, 7, 8

*Ziccarelli v. Dart*, 35 F.4th 1079, 1090 (7th Cir.), *cert. denied,* 143 S. Ct. 309, 214 L. Ed. 2d 136 (2022) ............................................................................ 20

## **ARGUMENT**

I. ***The District Court Erred in Finding Comparators were not Similarly Situated***

Defendants' response brief argues that Plaintiff failed to respond to the district court's determination that Plaintiff failed to establish a prima facie case of race discrimination because she did not identify similarly situated non-white employees. (Dkt. 25, p. 22). Plaintiff did specifically address the determination of the District Court that Plaintiff failed to meet the prima facie case in her opening brief, Section II(b) ("The District Court determined that Paterakos could not establish race discrimination claims because Plaintiff's prima facie case failed for lack of a comparator. Dkt. 147 at 31. In doing so, the District Court erred in two respects.")

Plaintiff's appeal is based on the premise that the district court erred in finding a failure in the prima facie case analysis where Defendants raise performance as the reason for the adverse acts and thus, the prima facie analysis was not necessary. Because Defendants discriminated against Plaintiff through discipline and pointed to that discipline as the reason that the adverse acts were proper, Plaintiff would not be able to meet the prima facie case without a review of the evidence in the record that the basis for the discipline was pretext. In such cases, the recent case law in this Circuit is that the district court is not to consider the Plaintiff's prima facie case, but instead skip to the question of whether the plaintiff presented sufficient evidence that would allow a reasonable jury to find that Defendants engaged in discrimination. *See Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023).

Defendants argue that Plaintiff's argument that the District Court should not have proceeded through the prima facie case is "wrong." However, the case law for courts in this Circuit is clear that when performance is raised as the reason for adverse actions, the court does not need to consider the prima facie case framework of *McDonnell Douglas*. *Vichio,* 88 F.4th at 691; *see also Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023); *Cox v. FCA US, LLC*, No. 122CV01279JMSMJD, 2024 WL 1363804, at *14 (S.D. Ind. Apr. 1, 2024); *Bommiasamy v. Galesburg Hosp. Corp.*, 727 F. Supp. 3d 767, 791 (C.D. Ill. 2024). The *McDonnell Douglas* prongs do not assist in the analysis where the people judging the Plaintiff's performance are the same people accused of discriminating against her. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n. 3 (7th Cir.2001).

The District Court found that Plaintiff did not have similarly situated comparators because the comparators had not been disciplined as harshly as she had. But that is precisely Plaintiff's point as to why it was error for the Court to engage in prima facie case analysis separately from the evidence of pretext. *See Coleman v. Donahoe*, 667 F.3d 835, 858 (7th Cir. 2012) ("Where the plaintiff argues that an employer's discipline is meted out in an uneven manner, the similarly-situated inquiry dovetails with the pretext question."); *see also Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) ("Our review of the record reveals inconsistencies in definition and disparities in application that call into question United's proffered justification and make summary judgment inappropriate.")

Plaintiff argued in her opening brief that the Court's determination that Plaintiff did not have a similarly situated comparator was error because the Court failed to properly consider the evidence in Plaintiff's favor that she was treated differently than her non-white co-workers. *See* Dkt. 21, Statement of Facts, pg. 9-12, Argument section II(c) and II(d).

Even if the district court properly applied the *McDonnell Douglas* framework, the Court's failure to account for Plaintiff's evidence that she was disciplined more harshly than her comparators as part of that analysis made the similarly situated analysis an "insurmountable hurdle." *See Coleman at* 851–52 ("The purpose of the similarly-situated requirement is to "provide plaintiffs the 'boost' that the *McDonnell Douglas* framework intended. Demanding nearly identical comparators can transform this evidentiary "boost" into an insurmountable hurdle.") (internal citations omitted). "The real question is whether they were treated more favorably by the same decisionmaker." *Id*. at 848.

Whether employees are similarly situated is a flexible, common-sense, and factual inquiry. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225–26 (7th Cir. 2017) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)). Whether a comparator is similarly situated is often a question for the jury. *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 918-19 (7th Cir. 2022). Relevant factors include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other

qualifications—provided the employer considered these latter factors in making the personnel decision." *Id.* Plaintiff's opening brief cited to evidence in the record that she was treated less favorably than Beverly Anderson and Gregory Turner, who are African-American ACLSs and also reported to Pulphus and Warren. (Dkt. 127, ¶ 1). Beverly Anderson and Gregory Turner have engaged in the same conduct as Plaintiff and the requirements were not applied to them or they were not disciplined for their conduct. (*See e.g.,* Dkt. ¶ 127, 1, 3, 4, 6, 7, 8, 12, 14-17, 20-23, 26, 28, 39). "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman,* 667 F.3d at 846. For instance:

- The break "policy" that the ACLS were required to ask for permission to take breaks only applied to her and she did not witness anyone else in Room 100 "have to ask for permission to take a break." (Dkt. 113, ¶ 25). Greg Turner testified that if the supervisor is not in her office, he would proceed to go on his break anyways. He has never been disciplined for proceeding to go on a break when he did not get permission. Gregory Turner testified that he stated to Warren "...we never had to do that before." See Ex. C, Turner Dep., 11: 16-20. Warren never told Gregory Turner that he was not allowed to be in the lobby or in the hallway during his breaks. (Dkt. 127, ¶ 4).

- Beverly Anderson testified that Warren never told her she had to get permission before taking a break. Erica Pulphus testified that Warren did not announce to all employees of the office or communicate in any other way with all the employees in the office that they were required to ask permission to take a break. Warren could not recall during her deposition testimony whether she had told anyone besides Plaintiff that they had to inform one of the supervisors when they would like to take a break. (Dkt. 127, ¶ 7).

- Gregory Turner used his cell phone at his workstation. Turner testified that Warren never told him he could not have his cell phone at his desk and that he occasionally made cell phone calls from his desk at work. Warren admitted that she saw various employees using their cell phones at their desks when not on break. (Dkt. 113, ¶ 33-34; Dkt. 127, ¶ 27).

- The Personnel Rules do not state that it is a policy violation to use work tools for personal use. The Union representative confirmed, "all of us do this from time to time." Plaintiff testified that other employees used the fax machine for personal business "all of the time." Plaintiff testified she would see personal things left on the machine, that people printed out, copied or faxed. (Dkt. 127. ¶ 51; Dkt. 113, ¶ 41).

- Pulphus observed all employees forgetting to put their phone on not ready status. She also testified in her deposition that she did not observe anyone forgetting more than others to put their phone in not ready status. Pulphus never disciplined anyone for forgetting to put their phone on "not ready" status. Pulphus also testified that she was not aware of Warren discipling anyone other than Plaintiff for failing to put their phone on "not ready," mode even though all ACLS's forgot to do so. Beverly Anderson testified that she was never told that she had to put her phone on not ready when she left to go on break. Gregory Turner has forgotten to put his phone on not ready status "many times" and has never been disciplined. Griselda Chavez, AFSCME Local 1669 Chief Union Steward who would represent and assist the employees of Room 100 with any discipline issues, stated that she was not aware of any other employees of Room 100 having been disciplined for not putting their phones in not ready mode. (Dkt. 127. ¶ 12, 14, 17).

- The practice in Room 100 had been that employees could swipe in up to . hour later than their start time, so long as they made up the time and worked the full 7 hours. Beverly Anderson was never disciplined for coming in late or staying late. Beverly Anderson testified that she was not told that she had to get the client off the phone and that she couldn't take a later lunch when the call went over the beginning of her designated lunch hour. (Dkt. 127. ¶ 18-19).

- If the ALCSs have a call that takes 15 minutes past the beginning of their scheduled lunch hour, they are able to leave for lunch late and take their full hour. However, even when Plaintiff was on the phone one minute past the start of her lunch hour, Ms. Warren harassed her and told her to get off the phone quickly. Beverly Anderson testified that she was not told that she had to get the client off the phone and that she couldn't take a later lunch when the call went over the beginning of her designated lunch hour. (Dkt. 127. ¶ 20-21).

- Warren never told Beverly Anderson that she cannot speak to officers at City Hall. Warren never told Gregory Turner that he was not allowed to talk to the police officers in the lobby of City Hall. Monica Rafac admitted

that there is not a policy prohibiting communicating with the police officers in the lobby of City Hall. (Dkt. 127. ¶ 22-23, 26).

Thus, Plaintiff did address the District Court's determination that Plaintiff did not meet a prima facie case for failure of evidence of similarly situated comparators. Moreover, based on a review of the evidence in the record, this Court should find that the District Court erred in determining Plaintiff's prima facie case failed for lack of a comparator where Plaintiff presented sufficient evidence to support a reasonable inference that Defendants used Paterakos's performance as a pretext for discrimination and the district court failed to consider the evidence in her favor that she was treated differently than her non-white counterparts.

## II. *There Is Sufficient Evidence to Warrant a Trial As to Whether Paterakos's Discipline Was Pretext for Discrimination*

Defendants next argue that Paterakos's race discrimination claims fail on the merits. The ultimate question to be decided is whether Paterakos presented sufficient evidence that would allow a reasonable jury to find that Defendants discriminated against her on the basis of her race. *Vichio,* 88 F.4th at 691. The focus here to determine whether there is sufficient evidence of discrimination is on pretext. "An employer's dishonest explanation of a decision can, by itself, support an inference that its real reason was unlawful." *Vichio,* 88 F.4th at 695. Courts should be "particularly careful in employment discrimination cases to avoid supplanting [their] own view of the credibility or weight of the evidence for that of . . . the jury . . . ." *Emmel v. Coca-Cola Bottling Co.,* 95 F.3d 627, 630 (7th Cir. 1996).

There is no dispute that Plaintiff's disciplinary suspensions were adverse actions. Defendants' response brief argues that Paterakos "routinely disregarded workplace rules." (Dkt. 25, pg. 20). However, Paterakos has presented sufficient evidence to create an issue of fact that the "workplace rules," that she was alleged to have disregarded were not in fact "workplace rules," rather they were rules put in place solely for her or not rules at all. (Dkt. 113, ¶ 25, 32, 34; Dkt. 127, ¶ 7, 10, 26, 28, 30, 49, 51).

Paterakos presented sufficient evidence to raise a disputed issue of fact as to whether Warren's reasons for her suspensions were pretextual. First, as discussed above, Plaintiff presented evidence that she was treated less favorably than those of different races. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 985 (7th Cir.2001). Paterakos also presented evidence that the rules were enforced selectively. *Ismail v. Brennan*, 654 F. App'x 240, 245 (7th Cir. 2016) ("Selective enforcement of a rule calls into question the veracity of the employer's explanation.") Additionally, Paterakos did not have any discipline in her file as an ALCS until Defendant Warren became her supervisor. (Dkt. 113, ¶ 38). Paterakos received her first disciplinary corrections from Defendant Warren the very first day that Warren supervised the office. (Dkt. 127, ¶ 2). *Vichio,* 88 F.4th at 691.

Paterakos refuted the factual basis for the discipline being imposed on her, including that policies did not exist or were not communicated, it would have been physically impossible for her to comply (such as when Warren was texting

her landline), and that others were not treated similarly. (*See e.g.*, Dkt. 113, ¶ 10, 25, 32, 34, 35; Dkt. 127, ¶ 29, 51, 39, 48, 65).

Pulphus testified that it is not a violation for an employee to take a break when there's not supervisor and that employees still get their breaks when there is not a supervisor. (Dkt. 127, ¶ 5). However, Warren told Plaintiff, if you don't have anyone to ask, then you cannot take a break. (Dkt. 127, ¶ 6). Warren did not implement a policy regarding breaks, but made it an individual requirement beginning in March 2020 that Plaintiff could not go on breaks without asking permission. (Dkt. 127, ¶ 7). Beverly Anderson testified that Warren never told her she had to get permission before taking a break. (Dkt. 127, ¶ 7). Greg Turner testified that if the supervisor is not in her office, he would proceed to go on his break anyways. He has never been disciplined for proceeding to go on a break when he did not get permission. (Dkt. 127, ¶ 4). It was only later in January 2021, after Plaintiff filed her lawsuit, that Warren then told Gregory Turner that he needed to seek permission to go on break. (Dkt. 127, ¶ 7). Gregory Turner testified that he stated to Warren "…we never had to do that before. (Dkt. 127, ¶ 4). Pulphus also testified that the previous procedure for informing the supervisor when you wanted to take a break, was to put a sign up at your desk that says break, but that most employees now just send Erica an email or say, "I'm breaking." (Dkt. 127, ¶ 6). On April 3, 2020, when Warren berated Plaintiff for not asking permission for a break, Plaintiff had placed an "on break" sign on her desk. (Dkt. 127, ¶ 6).

Beverly Anderson was allowed to take her lunch breaks in the room. (Dkt. 113, ¶ 23). However, Plaintiff was told that she could not stay in the office to take a break and make phone calls. (Dkt. 113, ¶ 32). Part of the additional scrutiny Defendants placed on Plaintiff included Warren and Pulphus reprimanding Plaintiff based on the fact that they observed Plaintiff spending her breaks, lunch time and FMLA leave in the hallway of City Hall or on the sidewalk outside of City Hall between March 2020 and February 2021. (Dkt. 113, ¶ 27). Plaintiff testified, "there's not a whole lot of places to go in terms of when the COVID came on too. Every place is closed. So, you know, I'm sure I have been in there and around there for the whole lunch hour just making calls and walking back and forth." (Dkt.113, ¶ 28).

Defendants argue that Plaintiff admitted that she did not attend the webinar. However, this is a misstatement of the facts. Plaintiff did not disobey a directive. The initial email stated that the webinar would be offered on two dates. (Dkt. 113, ¶ 47). The second email, which was sent the morning of June 3rd, did not state that the webinar was mandatory. (Dkt. 113, ¶ 48). The third email, sent by Warren approximately an hour before the webinar, also did not state that the webinar was mandatory. Id. Plaintiff responded to Warren informing her that she had already attended the webinar. (Dkt. 113, ¶ 48). She did not protest or object to attending the webinar. She simply informed Warren that she had already attended. Id. Warren did not respond to Plaintiff until after the seminar started. It was then that Warren stated for the first time that the webinar was mandatory, regardless of whether Plaintiff had already attended, and falsely stated that the

webinar was different. (Dkt. 113, ¶ 49; Dkt. 127, ¶ 41). Plaintiff followed Warren's directive and logged into the webinar. But by that time the webinar was almost over. (Dkt. 113, ¶ 49; Dkt. 127, ¶ 52).

Additionally, the pre-disciplinary notice stated that Plaintiff was being disciplined for violating the personnel rules, "when you were given instructions to complete various telework assignments." (Dkt. 113, ¶ 51). However, the webinar was the only telework assignment Plaintiff was given. (Dkt. 113, ¶ 46, 50; Dkt. 127 ¶ 52). Thus, the disciplinary notice again misstates the facts. As soon as Plaintiff was able to log into her email after technical difficulties, Plaintiff checked her emails hourly as directed and was available to complete work if it was assigned by management. (Dkt.127, ¶ 37). Plaintiff's three-day suspension was based on Plaintiff not responding to emails that did not say what Warren claimed they did and texts that Plaintiff did not receive because Warren was texting a landline. (Dkt. 113, ¶ 46, Dkt. 127, ¶ 52).

Paterakos also presented sufficient evidence of the animosity towards her. Warren stated "Stella is too privileged for me to speak to," and flat out stated that she was, "not elated," when her attempts to have her transferred failed. (Dkt. 127, ¶ 36, 42). While Defendants argue that these are stray remarks, because they were made by Warren who was the decisionmaker the remarks are evidence directly probative of potential discriminatory animus. *Emmel,* 95 F.3d at 632.

Moreover, the Defendants' actions in attempting to transfer Plaintiff is evidence of discrimination. First, the law has changed regarding whether transfers can be adverse employment actions. Plaintiff's transfer to the DePaul

Center, which changed her working hours and location, is an adverse act under *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967 (2024). In *Muldrow*, the Supreme Court stated that transfers did not have to cause a significant disadvantage in order to be actionable. *Muldrow*, 144 S. Ct. 967, 974–75 (2024). Therefore, Title VII by its statutory text and case law under Supreme Court precedent, do not require a significant disadvantage in order for the discrimination to be actionable.

Additionally, the animus and contradictory statements given by Defendants relating to the transfer of Plaintiff are background evidence supporting Plaintiff's discrimination claims. Defendant Warren began suspending Plaintiff within days of Warren failing to get Plaintiff transferred to the DePaul location. (Dkt. 127, ¶ 35, Dkt. 113,¶ 43). Defendant Warren and Plaintiff's other supervisors violated the Collective Bargaining Agreement in choosing Plaintiff to be transferred to the DePaul. (Dkt. 113, ¶ 45.) Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 723 (7th Cir. 2005) (An employer's failure to follow its own internal procedures is circumstantial evidence of discrimination). In April 2020, Defendants claimed to Plaintiff that she was chosen to be transferred to the DePaul Center because she was a veteran and DFSS needed experienced employees to train new employees at DePaul Center. (Dkt. 113, ¶ 43.) The Union tried multiple times to get an explanation for why Plaintiff was being transferred to the DePaul Center. (Dkt. 127, ¶ 34). Crystal Warren had objections to keeping Stella in Room 100, as per her email to Monica Rafac, Yolanda Curry, cc'd to Brandie Knazze (black), on 4/3/20 at 10:43 am in

which she stated, "If we back down at this juncture, we would be sending the wrong message." Brandie Knazze on 4/3/20 at 10:48 am then emailed Crystal Warren, Monica Rafac and Yolanda Curry and said, "You need Stella though she is a pain." "Let's take a step back and keep Stella at room 100." Crystal Warren on 4/3/20 at 11:16 am emailed Brandie Knazze, cc'd to Crystal Warren, Monica Rafac, Yolanda Curry, stating "not elated but I got it!" and again emailed them at 11:19 am that same day "At this juncture, the word is out and everyone is standing under the umbrella of 'seniority.' If you grant Stella, all are in for the ride!" Due to Warren's objections, Monica Rafac assigned Plaintiff to the DePaul Center. Monica Rafac emailed Crystal Warren, Brandie Knazze and Yolanda Curry on 4/3/20 at 11:42 am and said, "We will send her but just be prepared for her not to show up." (Dkt. 127, ¶ 36.)

Thus, Paterakos has presented sufficient evidence that the reasons for her discipline were false. A reasonable jury could find that defendant engaged in discrimination. "Pretext does not require that plausible facts presented by the defendant not be true, only that they not be the reason for the employment decision." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000). The District Court failed to consider Paterakos's evidence in its pretext analysis. Pretext "can be proven, among other ways, by evidence showing that the employer's explanation: (1) had no basis in fact; (2) was not the real reason; or (3) was insufficient to warrant the adverse employment action." *Altwasser v. Am.'s Auto Body, Inc.*, No. 21-CV-2524, 2024 WL 1798778, at *10– 11 (N.D. Ill. Apr. 25, 2024) (citing *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th

Cir. 1999); *James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998)). However, at Docket 147, page 34, the District Court stated, ". . .Paterakos has not presented evidence that suggests that Warren did not believe the reasons she set forth for the suspensions." The District Court ignored much of Plaintiff's evidence of contradictions, falsehoods, and inconsistencies in the allegations comprising the purported reasons for Plaintiff's suspensions. It is up to a jury to decide which set of facts to believe. Therefore, the District Court's decision should be reversed and remanded.

### III. *A Reasonable Jury Could Find that the Defendants Violated the FMLA*

The District Court erred in finding that "Paterakos has not provided any evidence that suggests that Warren and Pulphus did not genuinely suspect that Paterakos abused her FMLA leave." (Dkt. 147 at 38.) However, Paterakos presented evidence that policies and rules were applied to her that did not exist, or that were not applied consistently. Paterakos also presented evidence that the allegations stated in the disciplinary actions were false. Paterakos presented evidence that Defendant Warren and the other supervisors did not know what the rules were for FMLA or why she was taking intermittent FMLA. The purported reasons for disciplining Plaintiff for alleged FMLA violations do not stand up to scrutiny and are not credible. Therefore the District Court erred in finding that Plaintiff did not present evidence that Warren's belief was not honest.

Additionally, the District Court erred in finding that every moment of Plaintiff's FMLA leave must be in furtherance of care towards her father. Dkt. 147 at 39. "There is no statutory or regulatory text stating something to the effect

that "care" must involve some level of participation in the ongoing treatment of the family member's condition under the FMLA." *Ballard v. Chicago Park Dist.*, 900 F. Supp. 2d 804, 810 (N.D. Ill. 2012), *aff'd,* 741 F.3d 838 (7th Cir. 2014). Defendant Warren created the situation where Paterakos was required to take FMLA to make and receive phone calls regarding her father's care. The District Court relied on Defendant's arguments that they observed Plaintiff standing outside the building, talking to passers-by, and talking on her cell-phone as being outside of her FMLA without any evidence that she was not caring for her father. Therefore, the District Court improperly granted summary judgment on Plaintiff's FMLA claims.

Plaintiff's father had serious medical conditions including a stroke, a heart condition, and COVID. (Dkt. 127, ¶ 53). Plaintiff requested and was granted intermittent FMLA leave to care for her father by providing assistance with activities of daily living, communication with medical care providers, transportation, attendance of medical appointments, provision of medical and psychological support, medication management. (Dkt. 127, ¶ 53). Warren told Plaintiff she could not stay in the office to take a break and make phone calls. (Dkt. 113, ¶ 32). Plaintiff followed Warren's instructions and began submitting FMLA leave requests, using her sick leave, vacation time, and time off without pay for blocks of time during which she can make and be available for phone calls relating to her father's care. Plaintiff remained either in the lobby or outside the building for her time in order to return to work after her calls were completed. (Dkt. 127, ¶ 54). During Plaintiff's FMLA time, she would typically call her

parents and talk to her mother and father at least 2 or 3 times in the morning. Plaintiff would ask about how her dad was feeling, how his symptoms are, how his blood pressure is, what his oxygen levels were, if he moves how his oxygen levels are. They were supposed to monitor her father's oxygen levels for every minute of moving. Plaintiff would provide emotional support for her parents. Plaintiff would also ask about whether her father was taking his medications and whether he used his spirometer. When necessary, Plaintiff would talk to pharmacies and home health aids, nurses, and therapists about her father. Plaintiff would let them know that they could call her in the mornings and she would make herself available to be able to talk to them. (Dkt. 127, ¶ 54). Plaintiff would also discuss financials with her father and make arrangements to pay his bills or make appointments for him. (Dkt. 127, ¶ 55). Plaintiff also used her FMLA time to assist her father in daily living by shopping for hard-to-find items necessary to maintain a safe environment. Plaintiff testified that in July 2020, the COVID pandemic caused a shortage in sanitizing products, so she "would be on the lookout and know when the deliveries were coming in and ask at the local places, Walgreens, CVS, and [she] would ask when their deliveries are going to come with these supplies, so [she] could go over there." (Dkt. 127, ¶ 55).

Then Warren and Pulphus reprimanded Plaintiff based on the fact that they observed her spending FMLA leave in the hallway of City Hall or on the sidewalk outside of City Hall between March 2020 and February 2021. (Dkt. 113, ¶ 27). Plaintiff testified, "there's not a whole lot of places to go in terms of when the COVID came on too. Every place is closed. So, you know, I'm sure I have

been in there and around there for the whole lunch hour just making calls and walking back and forth." (Dkt. 113, ¶ 28).

On August 18, 2020, Warren sent a third Notification of Pre-disciplinary Investigation to Plaintiff, alleging Plaintiff violated FMLA policies by standing on the street outside of City Hall talking on her cell phone and conversing with the police officer stationed by her. The disciplinary notice alleged that Paterakos's actions did not indicate that she had a serious health issue. (Dkt. 127, ¶ 58). Plaintiff provided a rebuttal showing that her FMLA leave had been approved and that she had 7 hours on the clock each day, so her employer was not being short-changed. (Dkt. 127, ¶ 59). Plaintiff's phone records show that Plaintiff was not on her cell phone at any of the times that Warren and Pulphus allege that they observed her on her phone. (Dkt. 127, ¶ 60). Pulphus testified that she did not remember any of the observations and whether she made them. Warren testified that she did not recall which observations were hers and which were Erica's. Pulphus testified that she wrote her observations on copy paper and gave them to Crystal Warren. Warren testified that she documented her observations, "maybe in a note." But could not remember whether it was on paper, notebook, sticky note or computer spreadsheet. No notes have been produced, despite Plaintiff's requests for production. Warren did not recall documenting the activities of any other employee. Pulphus did not watch Plaintiff continuously during her alleged observations. Warren testified that she made the observations of Plaintiff as she (Warren) was leaving or coming into the building. (Dkt. 127, ¶ 61). Pulphus testified that she did not have any information that Plaintiff was

not speaking with a caregiver or to her parents during the phone calls. (Dkt. 127, ¶ 62). Pulphus did not know whether Plaintiff may be waiting for a ride or phone call relating to her father during the times that Pulphus observed her. (Dkt. 127, ¶ 62). Warren and Pulphus testified that they had not received any training on what it means under the FMLA to care for a parent. (Dkt. 127, ¶ 62). Pulphus doesn't know if there is a rule regarding how far in advance FMLA must be requested and didn't know why the allegation, "You submitted FMLA time requests at the last moment usually a day before," was included in the pre-disciplinary notice. (Dkt. 127, ¶ 62). Pulphus testified that she did not understand that Plaintiff was taking FMLA for the purpose of being able to speak with her father or doctors or caregivers on her cell phone. (Dkt. 127, ¶ 62). Warren testified that she did not know why Plaintiff had FMLA and whether it was for her own condition that made her unable to perform her job or for caring for a parent. (Dkt. 127, ¶ 62). Yet Warren signed the disciplinary notice stating that Plaintiff violated the FMLA as follows, "The reason you highlighted in your response was to take care of a parent, who has a serious health condition. You claimed to be waiting on a communication while standing outside City Hall. For you to be doing this outside of your place of employment was prove that this serious health condition did not make the employee unable to perform the employee's job." Warren testified that the source that she based her opinion on that Plaintiff was abusing her FMLA, was her own experience of previously being on FMLA for her own medical condition. (Dkt. 127, ¶ 67). Warren also testified that she did not know whether she had the right to request that Plaintiff not be

on the premises during her FMLA leave time. (Dkt. 127, ¶ 62). Warren claimed that determining whether Plaintiff's conduct of being outside the office or in the lobby during her leave was actually a FMLA violation was "above her pay grade." (Dkt. 127, ¶ 68). Despite all this, Warren suspended Plaintiff for 5-days without pay. (Dkt. 127, ¶ 63). Plaintiff grieved her 5-day suspension. The Union noted in the grievance that the punishment was harsh, unjust and unwarranted. (Dkt. 127, ¶ 63). Again on December 11, 2020, Warren sent an email to Plaintiff, stating, "It has come to my attention that you again have been seen in the lobby of City Hall socializing during FMLA hours. Please be mindful of your time and actions while utilizing FMLA. If there are circumstances that I should be aware of, please let me know." Monica Rafac responded to Warren warning Warren not to send anymore emails because they didn't know whether they had the right to request Plaintiff not be on the premises during her FMLA and that this can be viewed as singling her out. (Dkt. 127, ¶ 68).

Plaintiff's FMLA intermittent leave was reviewed and recertified annually, including in January 2021 after Warren supposedly believed that Paterakos was abusing her FMLA. (Dkt. 127, ¶ 66). Proper procedure if Warren truly suspected Plaintiff was abusing her FMLA would have been for Warren to discuss the matter with Reva Stanton to have HR decide. (Dkt. 127, ¶ 57).

Thus, Paterakos has shown that the Defendants' reasons for her FMLA discipline were false, therefore allowing for an inference that discrimination was the real reason for the discipline she received relating to her FMLA leave. *See*

*Juday v. FCA US LLC*, No. 119CV00831TWPMPB, 2021 WL 364203, at *6 (S.D. Ind. Feb. 3, 2021), *aff'd,* 57 F.4th 591 (7th Cir. 2023).

Additionally, the District Court improperly found that Plaintiff could not support an interference claim where she did not immediately stop taking FMLA. Plaintiff was discouraged from taking FMLA. Defendants' interference and retaliation led Plaintiff to attempt to avoid using FMLA time. In December 2020, Plaintiff tried to use regular leave without pay time, rather than FMLA because of the harassment she had experienced regarding her FMLA. Warren would not let Plaintiff use other time and demanded that she take time as FMLA instead. (Dkt. 127, ¶ 69). Plaintiff did not apply for FMLA for purposes of caring for her father in 2022 because she was "so beaten down," by the interference and retaliation she experienced. (Dkt. 127, ¶ 70). She questioned her supervisors how she could take FMLA without getting disciplined. She also did not take FMLA the next year even though her father's health condition remained. That is sufficient evidence to present a question of fact as to whether Defendants interfered with her FMLA rights. *Ziccarelli v. Dart*, 35 F.4th 1079, 1090 (7th Cir.), *cert. denied,* 143 S. Ct. 309, 214 L. Ed. 2d 136 (2022)

## CONCLUSION

For the reasons stated above, Plaintiff Stella Paterakos, respectfully requests that this Honorable Court reverse the district court's grant of summary judgment, remand this case for a jury trial, and award Paterakos any and all other relief that this Honorable Court deems appropriate under the circumstances.

**CERTIFICATE OF COMPLIANCE WITH THE LENGTH REQUIREMENTS OF F.R.A.P. RULE 32(a)(7), F.R.A.P. 32(g), CR 32(c)**

The undersigned counsel of record furnishes the following in compliance with F.R.A.P Rule 32(a)(7): I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 6162 words.

Respectfully submitted,

/s/ *Heidi Karr Sleper*

Heidi Karr Sleper

Heidi Karr Sleper, ARDC # 6287421
Kurtz, Sleper & Exline, LLC
610 W. Roosevelt Rd, Ste. A2
Wheaton, IL 60187
(630) 323-9444
hsleper@kselegal.com

**PROOF OF SERVICE**

The undersigned, an attorney, hereby certifies that the foregoing Reply Brief of Plaintiff-Appellant Stella Paterakos was served on the counsel of record via the Court's ECF filing system on December 16, 2024.

/s/ *Heidi Karr Sleper*

Heidi Karr Sleper